475 P.2d 486

**STATE of Arizona, Appellee,**

v.

**Cornelio ENRIQUEZ, Appellant.**

**No. 1993.**

Supreme Court of Arizona, In Banc.

Oct. 16, 1970.

---

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

UDALL, Justice:

The defendant, and one Florencio Ramirez, were charged, on January 27, 1966, with two counts of robbery and one count of wearing a mask for the purpose of preventing detection during the commission of a public offense. It was alleged that the defendant and Ramirez robbed James A. Kean and James L. Kean on the 15th of July, 1965, at the U-Totem Market at 8212 West Thomas in Phoenix.

In a jury trial the defendant was found guilty of all three counts and was sentenced for a term of ten to twenty years on each of Counts One and Two; and two to three years on Count 3, the sentences to run concurrently. From the judgment of conviction the defendant appealed.

On appeal the judgment of conviction was reversed and remanded. 102 Ariz. 402, 430 P.2d 422 (1967). The defendant was re-tried on the same charges. The matter came on for trial for a second time on July 1, 1968, and the defendant was convicted on all three counts. From this conviction the defendant has appealed to this court a second time.

Defendant raises four issues in this appeal. Three of these issues pertain to certain key physical evidence introduced at trial. He urges that the evidence was inadmissible, first because the search which located the evidence was not pursuant to a lawful arrest; secondly, because even if the arrest had been lawful, the search was unreasonable and in violation of the standards of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and thirdly because there was not sufficient foundation to connect the exhibits with the defendant. As a fourth ground for appeal, defendant urges that the trial court erroneously instructed the jury on reasonable doubt.

A brief summary of the state's evidence shows that on the evening of July 15, 1965, at approximately 10:30 p. m., two men wearing masks came to the door of the U-Totem Market at 8212 West Thomas. The taller of the two men carried a gun as they approached the manager of the store, James A. Kean. The men ordered Kean to put the money from the cash register into a paper bag taken from the stock of the store. Kean took the money from the cash register, opened the safe and took money from the safe and placed it in a bag. The two alleged robbers left the store with the paper bag and were seen running across the open field adjacent to the store.

Officer Dunn, the arresting officer, testified that on the evening of July 15, 1965, he received information by the police radio that the robbery had taken place. Officer Dunn drove to a point near the intersection of Sherman and 9th Place for the purpose of investigating the robbery. The contents of the radio message do not appear in the record. He further testified that it is approximately 12 miles from the place where the robbery had taken place to the intersection of Sherman and 9th Place. Officer Dunn parked his car near the intersection and partially concealed himself. Shortly thereafter, at about 11:20 p. m., a car carrying two men came to a rapid stop and parked directly across the street from Officer Dunn's car. The street was well-lighted and as the two men got out of the car the officer observed that the shorter of the two men was carrying a paper bag in his hand. Officer Dunn identified the shorter of the two men as the defendant, Enriquez. The two men entered a house at 940 S. 9th Place.

Dunn testified further that two or three additional police officers joined him at this time and they knocked at the door at 940 9th Place. After two or three minutes a woman opened the door, and Dunn saw in the living room the taller of the two men who had entered the house. Dunn placed him under arrest. Immediately thereafter Dunn looked through the door into another room, saw the other

suspect, the defendant herein, and arrested the defendant.

After the arrests had been made, Officer Dunn and his fellow officers searched the house and found a brown paper bag, concealed under the kitchen sink. The brown paper bag contained a pistol with five live shells in the chamber and one empty shell, two pair of cotton gloves, approximately $186.00 in currency, one small paper bag containing four rounds of ammunition and one cash register receipt on which appeared the date of July 15 together with the imprint of "Speed Mart No. 1."

Kean, the proprietor of the market which was robbed, explained that "Speed Mart" was the trade name used before U-Totem. He identified the receipt as coming from the cash register in his store the night of the robbery. He testified that the receipt showed a "no sale" transaction, meaning that the register was simply opened without recording a sale, and that the receipt also indicated it was the last recorded transaction of the day. He also testified that there were no further transactions in the store following the robbery on the night of July 15.

It is thus apparent that the key evidence on which the conviction is based is the contents of the paper bag indicating that it came from the robbery of the U-Totem.

■ The state here urges that this court should not consider defendant's arguments with respect to the admissibility of the contents of the bag in evidence. It is the state's position that because these exhibits were admitted at defendant's first trial on these charges, and because defendant did not appeal their admissibility after the first trial, he may not challenge their admissibility here. While we agree with the general proposition that appeals should not be taken piecemeal, we recognize that the record here is different than that before this court on the first appeal. In addition defendant's challenges go, at least in part, to violations, allegedly apparent on the face of the record, of fundamental constitutional rights. We therefore deem it proper in this case to consider these issues on their merits. See Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946); Metheany v. United States, 390 F.2d 559, cert. denied 393 U.S. 824, 89 S.Ct. 81, 21 L.Ed.2d 94 (9th Cir. 1968); State v. Pulliam, 87 Ariz. 216, 221, 349 P.2d 781 (1960).

■ Defendant's first argument is that the bag and its contents were improperly admitted because they were the fruits of a search conducted pursuant to an unlawful arrest, and therefore contrary to the Fourth and Fourteenth Amendments to the United States Constitution. There is no question that the officer searching the house did not have a search warrant. The lawfulness of an arrest without a warrant depends upon whether the facts and circumstances within the knowledge of the arresting officers were sufficient to warrant a man of reasonable caution to believe that a felony had been committed by the suspect. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Pederson, 102 Ariz. 60, 424 P.2d 810, cert. denied, 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142 (1967). If at the time of making the arrest the officers had no probable cause to make the arrest, then nothing which occurred after the arrest, including the fruits of the search, can make the arrest lawful or justify the search. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

■ Accordingly, in the instant case we must examine what the record shows to be the facts and circumstances within the knowledge of Officer Dunn at the time of the arrest. Here the record shows only that Officer Dunn, in response to a police radio broadcast, proceeded to the house where the defendant was arrested. The record shows that the officer knew of the robbery in question, but it does not show the nature of the radio broadcast or the

information on which it was based. The place of arrest was 12 miles from the scene of the robbery. The arresting officer clearly had not followed the defendant from the scene of the robbery. Such a barren record simply does not indicate facts or circumstances giving rise to probable cause for the arrest.

■■ Defendant's counsel at trial questioned the constitutional validity of the arrest and moved to suppress the evidence. However the trial judge held no hearing on the question of probable cause. Such a hearing should have been held to establish what information was available to the arresting officer at the moment of arrest.[1] Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). When the validity of an arrest is questioned, the burden is on the state to show that probable cause existed. Rouse v. United States, 123 U.S.App.D.C. 348, 359 F.2d 1014 (1966). Since the record in the instant case is not sufficient to determine whether probable cause existed, we believe this matter should be remanded for a hearing by the trial court to determine whether such cause existed. This procedure was recently followed in United States v. Lee, 428 F.2d 917, 923 (6th Cir., 1970). See also United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Griswold, 105 Ariz. 1, 457 P.2d 331 (1970).

We have still to consider defendant's remaining grounds for appeal. For the reasons indicated below, we find that these grounds are without merit and do not necessitate reversal of the conviction.

Defendant's next assertion is that even though the arrest may have been lawful, the search was unreasonable in that it extended to areas beyond the defendant's control in violation of the principles laid down by the United States Supreme Court in

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ Defendant's argument stems from the fact that the evidence was discovered in the kitchen, while defendant was arrested in a bedroom on the same floor of the house. We agree that Chimel v. California, supra, proscribes routine searches of other rooms and areas not under the immediate control of the defendant as violative of the Fourth and Fourteenth amendments. Chimel was decided in 1969 and the instant search was conducted in 1965. The Supreme Court has not yet ruled on Chimel's retroactivity. See Von Cleef v. N. J., 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed. 2d 728 (1969); Shipley v. Calif., 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969). However, we agree with the courts of several circuits which have held that the standards of Chimel v. California should not apply retroactively to searches conducted prior to the date of Chimel's decision in 1969. United States v. Bennett, 415 F.2d 1113 (2d Cir. 1969); Lyon v. United States, 416 F.2d 91, cert. denied 396 U.S. 1023, 90 S.Ct. 597, 24 L.Ed.2d 516 (5th Cir. 1969).

■ We believe that the search herein did not violate the standards in effect prior to Chimel. Judge Wisdom writing for the 5th Circuit Court of Appeals in Lyon v. United States, supra, has appropriately commented upon the law prior to Chimel with respect to searches for fruits of a crime:

"Under the law before Chimel the validity of a search incident to a valid arrest depended on the reasonableness of the search in the totality of the circumstances. See United States v. Rabinowitz [339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653] and Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. Here, it was reasonable to search

---

1. In a hearing to determine whether probable cause for the arrest existed, the information received by the arresting officer from another is not excludable as hearsay. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Pederson, 102 Ariz. 60, 424 P.2d 810, cert. denied 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142 (1967).

for the instrumentalities of the crime and for the fruits of the crime other than the Treasury bonds: the missing cash, turnpike bonds, safe, and wallet. This case is similar to *Harris,* involving the search of a four-room apartment and the seizure of an envelope containing altered selective service documents. The Court said 'the area which reasonably may be subjected to search is not to be determined by the fortuitous circumstance that the arrest took place in the living room as contrasted to some other room of the apartment'." 331 U.S. at 152, 67 S.Ct. at 1102. Lyon v. United States, supra, 416 F.2d at 93.

Accordingly, we conclude that defendant's conviction should not be reversed on the ground that the search of the premises was unreasonable in scope. If, on remand of this matter the trial court finds that there was probable cause for arrest, then the evidence should be considered admissible under the law as it existed prior to Chimel v. California, supra.

Defendant's third argument on appeal is that there is insufficient evidence in the record connecting the defendant with the paper bag and its contents. Defendant urges that the bag was merely found on premises occupied by another, and that defendant's mere presence on the premises where exhibits are found is an insufficient foundation for their admission. Defendant relies upon State v. Hunt, 91 Ariz. 149, 370 P.2d 642 (1962), and Dorsey v. State, 25 Ariz. 139, 213 P. 1011 (1923).

■ Upon careful consideration of the evidence we must disagree with defendant's assertion that the only connection between defendant and the evidence in question was his presence in the house. The evidence shows that not only was the defendant present in the house, but that he was positively identified by Officer Dunn as having carried a paper bag into the house shortly before his arrest. Moreover, the time of defendant's arrival at the house corresponded precisely with the driving time between the site of the robbery and the location of the house. We therefore conclude that there was sufficient connection between defendant and the evidence.

Finally defendant urges that the last paragraph of the instruction to the jury on reasonable doubt was incorrect and constituted fundamental error. The instruction is the standard Maricopa Recommended Jury Instruction No. 204.[2]

■ There was no objection to this instruction at trial. We therefore follow our recent decisions on this question, and hold that the giving of the instruction, in the absence of objection, did not constitute fundamental error. State v. Martin, 105 Ariz. 265, 463 P.2d 63 (1969); State v. Jordan, 105 Ariz. 250, 462 P.2d 799 (1969); State v. Valdez Padilla, 105 Ariz. 214, 462 P.2d 82 (1969).

In accordance with the foregoing, this cause should be remanded for a hearing on the question of probable cause for making the arrest. This court reserves juris-

2. That instruction is as follows:
   "A defendant in a criminal case is presumed by law to be innocent. The law does not require a defendant to prove his innocence or to produce any evidence.
   "The burden of proving the defendant guilty beyond a reasonable doubt rests upon the state. This burden never shifts throughout the trial.
   "The term 'reasonable doubt' means a doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt for which a reason can be given, arising from an impartial consideration of the evidence or lack of evidence. (It means a doubt that would cause a reasonable man to pause or hesitate when called upon to act upon the most important affairs of life.)
   (If, after consideration of all of the evidence, you are convinced of the guilt of the defendant, then I instruct you that you are satisfied beyond a reasonable doubt. If, on the other hand, you are not convinced of the guilt of the defendant, then I instruct you that you are not satisfied beyond a reasonable doubt.)"

diction pending such hearing and the Superior Court's report on its findings.

Cause remanded for proceedings consistent herewith.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and McFARLAND and HAYS, JJ., concur.