557 P.2d 565

**The STATE of Arizona, Appellee,**

v.

**William C. HOULF, Appellant.**

**No. 2 CA–CR 772.**

Court of Appeals of Arizona, Division 2.

Sept. 16, 1976.

Rehearing Denied Oct. 27, 1976.

Petition for Review Denied Nov. 23, 1976.

Bruce E. Babbitt, Atty. Gen., Phoenix, by Heather Sigworth, Asst. Atty. Gen., Tucson, for appellee.

Hirsh, Shiner & Polis, P. C. by James A. Shiner, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Appellant was found guilty by a jury of possession of marijuana for sale in violation of A.R.S. § 36–1002.06, and was sentenced to serve not less than two nor more than three years in the Arizona State Prison.

Two points are raised for our consideration, neither of which mandates reversal of appellant's conviction. He claims first that prosecutorial misconduct deprived him of his right to a fair trial and of his Sixth Amendment right to confrontation, and second, that his arrest was without probable cause, alleging the State failed to establish the reliability of the informant.

The pertinent facts follow. On April 10, 1975, a private citizen informant contacted Tucson Police Department Detective Thomas Moorehead and informed him there was an unusual amount of vehicular traffic at 1805 West Limewood. He stated that persons appeared to be loading and unloading things from the vehicles and that the traffic occurred both day and night. The private citizen again contacted Moorehead on May 14 and told him he had seen two Mexican males remove green garbage bags from a vehicle and carry them inside the house at 1805 West Limewood. He further reported that the bags appeared to be heavy. Sometime between May 14 and May 18, officers conducted a two-day surveillance of 1805 West Limewood which revealed no additional information. On May 18 the informant told Moorehead that appellant was in the process of carefully loading green garbage bags into the trunk of a Mercury automobile on which appellant had changed the license plates.

Shortly after receiving that information, Detective Moorehead and other officers stopped appellant three miles east of I-10 on Tangerine Road. Appellant was ordered out of the car and given his Miranda rights. One of the officers went to the rear of the Mercury, smelled marijuana and asked appellant for the keys. The vehicle was found to contain approximately 450 pounds of marijuana.

After appellant had been taken into custody, a telephonic search warrant was obtained permitting a search of the home. At the home a list of license plate numbers and vehicle descriptions relating to narcotics officers' vehicles was discovered in the livingroom, along with two scales in a rear room which had no furniture. In addition, a Tucson Gas and Electric Company bill, a car rental agreement, a Union Bank credit slip and a letter addressed to appellant were removed from the house.

First, appellant maintains that on numerous occasions the prosecutor made improper comments. We agree. However, we do not believe that such errors were reflected in the outcome of the case. The most serious error occurred in the following question directed to Detective Billy Morgan:

> "Q. Since that time, have you been made aware of the fact that the court has decided that there was probable cause to stop the vehicle to search it?"

Defense counsel objected and moved for a mistrial which was denied.

Appellant relies on *State v. Woodward*, 21 Ariz.App. 133, 516 P.2d 589 (1973). In that case, Division One of this court was faced with a situation where the prosecutor made a similar comment referring to the quantum of evidence necessary for the obtaining of a search warrant, implying that the judge looked with favor upon the prosecution. The case cited the language from *Sullivan v. State*, 47 Ariz. 224, 55 P. 2d 312 (1936) as the general test for determining if improper statements are unduly prejudicial:

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks." 47 Ariz. at 238, 55 P.2d at 317.

In *Woodward*, counsel made three separate comments bearing on the possibility that the court looked with favor upon the prosecution. In addition, the defense attorney did not object to the improper statements at the time they were made but rather waited until the close of argument to move for a mistrial. It is always better practice to object so that the court may admonish the jury to disregard the improper statements and attempt to erase the impression the jury has received. *State v. Gonzales*, 105 Ariz. 434, 466 P.2d 388 (1970); *State v. Boozer*, 80 Ariz. 8, 291 P.2d 786 (1955).

Here, only the one comment quoted above implied some sort of link between the prosecution and the court. The other comments (1) implied the scales belonged to appellant when they were actually found in an unoccupied part of the house; and (2) inserted three instances of soliciting what the court considered hearsay. These statements are not of the type referred to in *Woodward* which imply a conspiracy between the court and prosecutor. Also, all the statements were objected to and the jury was instructed to disregard all the improprieties.

Appropriate language in 75 Am.Jur.2d Trial § 264 (1974) reads:

"In a number of cases, it has been held that statements by the prosecuting attorney which conveyed or tended to convey to the jury the impression that the trial court believed the defendant guilty of the crime charged, *in conjunction with the court's failure to take*

*proper or sufficient steps to eradicate the prejudice arising therefrom,* constituted such prejudicial error as to warrant a reversal. . . ." (Emphasis added.) At 342.

We think the court's admonitions were effective and that the improper comments did not contribute to the verdict. We do not believe that, under the circumstances, the verdict would have been different had the utterances not occurred. The evidence showed that appellant was observed carefully placing green plastic garbage bags containing heavy compact objects into the trunk of the same car in which he was arrested, that he was arrested shortly thereafter with approximately 450 pounds of marijuana in green garbage bags in the trunk of his car, that he made what amounted to transparently fictional exculpatory statements when arrested and a direct admission shortly thereafter, and that marijuana debris and paraphernalia were found in his house which smelled strongly of marijuana. With this set of facts, we cannot see that the verdict "probably" would have been different without the prosecutor's comments. We think the error was harmless.

Appellant's second argument is that the arrest was without probable cause and, therefore, in violation of the Fourth Amendment because the reliability of the informant was in question. Probable cause, the essential prerequisite to a lawful arrest, exists when the facts and circumstances within the law enforcement officer's knowledge, and of which he had reasonably trustworthy information, is sufficient, in itself, to warrant a reasonable man to conclude that a crime has been or is being committed by the suspect. *State ex rel. Flournoy v. Wren,* 108 Ariz. 356, 498 P.2d 444 (1972); *State v. Enriquez,* 106 Ariz. 304, 475 P.2d 486 (1970). Appellant alleges that without the information supplied by the informant, the officers would have had no reason to suspect appellant of unlawful activities and claims that

the informant was not tested as to his reliability as is required under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *State v. Ponce,* 16 Ariz.App. 122, 491 P.2d 845 (1971). This is not, as was *Aguilar,* an arrest by warrant situation. In *Beck v. State of Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the United States Supreme Court said:

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search . . . .

When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543." 85 S.Ct. at 228.

In the case before us, the police had no reason to doubt the reliability of the citizen-informant who identified himself and was not, as in *Aguilar* and other informer cases decided by the United States Supreme Court, an underworld informer who might have some reason to fabricate the "tip". When a citizen telephones the police department with information, the police are justified in following up that information without having to ascertain the reliability of the informant. The officers were justified in relying on this citizen's report of unusual activity and such information gave rise to a reasonable suspicion in the minds of the officers that criminal activity was taking place. The stop of the automobile without a warrant was, of course, sanctioned by *Carroll,* supra, and its progeny. Thus, with the requisite probable cause, the officers then could conduct a related search. *Rios v. United States,* 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960). In any event, probable cause to search arose when the

officers smelled the marijuana. *See, State v. Puig*, 112 Ariz. 519, 544 P.2d 201 (1975).

We find that the fruits of the search were admissible and that the officers had probable cause, based on the identified citizen-informant's information, to stop the vehicle and arrest appellant.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.