**UNITED STATES of America, Plaintiff,**

v.

**Daniel B. LONGMAN, Defendant.**

**No. G81–107 CR.**

United States District Court,
W. D. Michigan, S. D.

Jan. 25, 1982.

Donald A. Davis, Asst. U.S. Dist. Atty., Grand Rapids, Mich., for plaintiff.

Joel S. Whetstone, Grand Rapids, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Defendant Daniel B. Longman brings before this Court his motion to suppress evidence pursuant to Fed.R. Crim.P. 41. Specifically, the defendant moves to suppress the following properties as evidence:

1. Seven-Thousand Nine-Hundred Fifty-Two ($7,952.00) in U.S. currency;
2. Garbage bag and contents thereof;
3. Scales;
4. Suitcase and contents thereof;
5. Shotgun and case.

In addition, the defendant seeks to suppress certain unidentified statements made by him during a police interview in the early morning hours of September 4, 1981. In response, the Government argues that all properties listed above were lawfully seized and that all statements elicited from the defendant were obtained pursuant to the defendant's voluntary, knowing, and intelligent waiver of his constitutional rights.

The Court finds that Kent County Sheriff deputies stopped the defendant at approximately 6:00 p. m. on the evening of September 3, 1981, following a high speed chase for a distance of some four miles. Originally stopped for speeding, the defendant was subsequently arrested for driving under the influence of intoxicating liquor. Following his arrest, the deputies removed $2,952.00 in U.S. currency from the person of the defendant.

The defendant was the sole occupant of the 1979 Oldsmobile he was driving. Therefore, pursuant to standard Kent County Sheriff Department procedure, the arresting officers ordered the car to be impounded until the release of the defendant. Prior to the car's removal to the impoundment lot, the deputies made a standard inventory of the automobile's contents. Kent County's standard inventory procedures include an inventory of items located on and under the front and rear seats, within the glove or passenger compartments, and finally within the trunk, whether locked or unlocked.

The deputies began their inventory by first examining the automobile's interior. There they discovered $5,000.00 in U.S. currency under the driver's seat. The inventory continued to the locked trunk. Opening the trunk, the deputies observed in plain view a large, sophisticated scales and an open garbage bag. The garbage bag itself

revealed in plain view a burlap bag and a small amount of a brown leafy substance. The deputies performed a field test upon the leafy substance and the results were positive for marijuana.

The two quantities of U.S. currency, together totaling $7,952.00, were placed in a safe at the jail admission's office and subsequently seized subject to a state warrant on September 4, 1981.

On September 3, 1981, defendant was booked into the Kent County jail on a drunk driving charge. A breathalyzer test was voluntarily taken by the defendant at 7:30 p. m. It revealed the defendant's level of intoxication to be .17%. Six hours later, on September 4, 1981, at approximately 1:30 a. m., the defendant was taken to an interrogation room to be questioned by Detective Sergeant William O. Burden. Prior to any questioning, Detective Burden advised the defendant of his constitutional rights and obtained the defendant's signature waiving the same. During the questioning, Detective Burden observed that the defendant talked normally and walked without staggering. Overall, Detective Burden concluded that the defendant's appearance and behavior were unremarkable except for the presence of bloodshot eyes. At this time Detective Burden informed the defendant that he was also being held pursuant to a possession of marijuana charge which had been authorized by the assistant county prosecutor.

On September 8, 1981, Detective Burden contacted Special Agent Richard Robins of the United States Drug Enforcement Administration. Agent Robins was informed as to the large sums of money found upon the person of the defendant and within the interior of the car; and was also informed that a large sophisticated weighing scale and marijuana residue had been found during an inventory of the trunk of the 1979 Oldsmobile the defendant had been driving the night of his arrest. Detective Burden further advised agent Robins that the defendant had been charged with possession of marijuana. On September 10, 1981, Agent Robins seized from the State of Michigan defendant's currency, totaling $7,952.00, pursuant to Title 21 U.S.C. § 881.

On September 11, 1981, Robins and fellow agent John J. Peterson went to the residence of defendant to seize the 1979 Oldsmobile pursuant to Title 21 U.S.C. § 881. To get to the defendant's residence, they were required to enter a private service drive marked with "No Trespassing" and "Private Drive" signs. Prior to encroaching upon defendant's property, the agents spotted in open view the sought after automobile. At this point the agents went to the residence of the defendant, and, after identifying themselves, informed the defendant that the 1979 Oldsmobile was being seized pursuant to federal forfeiture statutes.

Defendant was then told that he could retrieve any valuables which he might have in the automobile. The defendant appears to have removed a coat from the interior of the vehicle, and then proceeded to the trunk. Under the observation of the agents, defendant unlocked the vehicle's trunk and removed a plain brown suitcase and a shotgun covered in its case. Agent Robins asked the defendant where he was going with the shotgun and suitcase. Defendant replied that they needed a search warrant. At this point, against the will of the defendant, Agent Robins seized the suitcase and covered shotgun and placed them both back into the trunk. The agents then seized the keys to the Oldsmobile and drove away.

On September 11, 1981, pursuant to a search warrant issued by U.S. Magistrate Stephen W. Karr, the trunk of the Oldsmobile was searched. The agents, also pursuant to the search warrant, opened the locked suitcase and discovered approximately 664 grams of marijuana and $4,000.00 in U. S. currency. On September 24, 1981, defendant was indicted for possession of marijuana with intent to distribute in violation of Title 21 U.S.C. § 841(b)1(B).

Defendant first seeks to suppress the evidence obtained at the time of his arrest for driving under the influence of intoxicating liquor. In other words, defendant seeks to

suppress the currency found on his person, the currency found under the front seat of the vehicle he was driving, and the marijuana and scales found within the vehicle's trunk.

The starting point for this matter begins with a discussion of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel*, the Court established the right of an arresting officer to engage in a warrantless search of an arrestee and those areas within his immediate reach without the requirement of further probable cause. The Court explained that a warrantless "search incident to arrest" is justified by the need to protect the arresting officers from hidden weapons and to prevent the destruction of evidence. *Id.*, 762–763, 89 S.Ct. 2039. Subsequent courts have held that a search of the arrestee's person is no less permissible where it occurs at the police station as opposed to the actual location of arrest. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Collom*, 614 F.2d 624 (9th Cir. 1979).

Under *Chimel* and its progeny, it is evident that the currency discovered upon the person of the defendant is admissible as evidence. The currency was discovered as an incident to a lawful arrest and therefore falls squarely within the settled authority of arresting officers to engage in warrantless searches of an arrestee's person.

Inventory searches of automobiles have generally been upheld as being reasonable and not in violation of the fourth or fourteenth amendments. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman*, the Court held that non-investigative inventories of an arrestee's impounded vehicle may be done without a warrant and without probable cause when done pursuant to standard police procedures. Such authority, the Court reasoned, is necessary to ensure three independently important results. First, the need to safeguard the vehicle owner's property; second, the need to protect the police and public from weapons and contraband that vandals could take from the vehicle;

and third, the need to protect the police from civil liability based upon unfounded property claims for lost or stolen items. *Id.*, 369, 96 S.Ct. 3097.

Defendant's basic position is two-fold. First, the defendant argues that in fact the September 3, 1981, inventory was nothing more than a pretext for what would otherwise be an unlawful search. Second, the defendant argues that *Opperman* does not grant to police the right to inventory the contents of a locked trunk.

Defendant is correct that *Opperman* does not provide police with the authority to engage in *investigative* searches without a warrant. The question of importance is thus how to determine whether the inventory was truly *non-investigative* as the Government claims. The *Opperman* court appears to have placed much emphasis upon the fact that there the inventory search was performed under routine, standard police practices. This factor, according to the court, tended to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function. *Opperman*, 374–75, 96 S.Ct. 3099. *See also, Cady v. Dombrowski*, 413 U.S. 433, 444, 93 S.Ct. 2523, 2529, 37 L.Ed.2d 706 (1973). The effect of standardized procedures is, in other words, to eliminate an officer's discretion in determining whether to perform an inventory or what areas to examine. Thus, under standardized inventory procedures, "pretext" inventories are reduced to a minimum.

Here it is uncontroverted that the deputies performed the inventory of defendant's car pursuant to standard Kent County Sheriff Department procedures. Detective Burden's testimony established that both the deputies' decision to impound the vehicle and the scope of the inventory itself were performed pursuant to standard police procedure. Thus, this Court finds no basis for concluding that the inventory was a pretext for an investigative search.

Defendant attempts to escape the rule of *Opperman* by pointing out that the glove compartment in *Opperman* was unlocked, and that in the instant case the trunk had

to be opened with a key. This argument overlooks the fact that though the glove compartment in *Opperman* was unlocked, the car itself was locked. *Id.*, 366, 96 S.Ct. 3095. Therefore, in both *Opperman* and the instant case a key had to be used before access could be made to the particular area where the search later complained about was effected. Thus, the fact that here the trunk was locked does not in and of itself distinguish this case from *Opperman*. *United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir. 1977).

That there is no meaningful difference between *Opperman* and the instant case becomes even more apparent by recalling the underlying principles of *Opperman*. Common sense suggests that the size and nature of an automobile owner's property determines whether the owner selects the passenger compartment or the trunk as the place for storage.[1] Similarly, the trunk is as likely a place for the storage of weapons and contraband as the passenger compartment, if not more so. And finally, the trunk, if not inventoried, could easily serve as the source of unfounded claims for lost or stolen property.

■ Thus, in view of *Opperman*, this Court concludes that the deputies properly inventoried the Oldsmobile's interior and trunk and thereby lawfully came into the plain view of the $5,000.00 under the driver's seat; and, the scales and marijuana residue within the trunk. It is well established that objects seen within the plain view of an officer from a place he is lawfully entitled to be fall within an exception to the warrant requirements of the fourth amendment. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Therefore, it follows that the $5,000.00 in U. S. currency, scales, and marijuana are admissible as evidence.

■ Defendant then argues that any statements elicited from him in the interview conducted by Detective Burden are inadmissible because, although he was informed as to his constitutional rights and signed a card acknowledging and waiving the same,[2] he did not do so "knowingly and intelligently." In support of this argument defendant relies exclusively upon the fact that six hours prior to the questioning he had a measured intoxication level of .17%. In other words, defendant seeks a ruling from this Court that, as a matter of law, he was incapable of knowingly and intelligently waiving his constitutional rights.

This the Court cannot do. Initially, the Court notes that the intoxication level was one establishing the inability to *operate* a motor vehicle, and does not necessarily indicate one's inability to understand his constitutional rights and the effect of waiving them in the face of police questioning. It is even more important to note that the defendant's intoxication level was measured at 7:30 p. m. September 3, 1981, but the questioning did not occur until six hours later, at 1:30 p. m. September 4, 1981.

Any questions concerning the intoxication level of defendant at the time of the interrogation were put to rest by the uncontroverted testimony of Detective Burden. His

---

1. Counsel for defendant acknowledges this in his initial brief. "Ample evidence of this fact would be those *many* individuals who *routinely* place their valuables in the locked trunk rather than the locked interior of public functions." Brief of Defendant, pg 8. (Emphasis Court's.) Moreover, the Supreme Court has, on at least one occasion, recognized the vulnerability of an automobile's trunk to vandals. *Cady v. Dombrowski*, 413 U.S. 433, 444, 448, 93 S.Ct. 2523, 2529, 2531, 37 L.Ed.2d 706 (1973).

2. The card, Government Exhibit No. 1, reads in relevant part:

CONSTITUTIONAL RIGHTS
1. You have the right to remain silent.
2. Anything you say can be used against you in a court of law.
3. You have the right to the presence of a lawyer before and during any questioning.
4. If you wish a lawyer and cannot afford one the court will appoint one before any questioning.

WAIVER
I have been advised and understand each of the above constitutional rights, and I am willing to answer questions.
DATED this 4th day of Sept., 1981, at 1:33 a. m.
NAME Daniel Brian Longman
SIGNATURE (above in handwriting)
WiTNESS William O. Burden

testimony established that the defendant's appearance and mannerisms failed to exhibit any signs of drunkenness. Therefore, this Court concludes that the defendant knowingly and intelligently waived his constitutional rights to remain silent and that any statements elicited from him during the questioning by Detective Burden at 1:30 a. m. on September 4, 1981, are admissible as evidence.

Finally, defendant argues that this Court should suppress the brown suitcase and its contents upon the grounds that the warrant to search the suitcase was not supported by a sufficient affidavit. Defendant's argument is two-fold. First, he argues that the underlying support for the issuance of the warrant to search the suitcase rested entirely upon the agent's allegation that he detected the odor of marijuana emanating from the suitcase. Second, he then argues that the agent lacked any lawful basis upon which to seize the suitcase in the first place. Thus, according to the defendant, the subsequent detection of marijuana odor is the fruit of an unlawful seizure and cannot be considered by this Court in evaluating the sufficiency of the affidavit in support of the search warrant. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In determining the sufficiency of the affidavit, this Court is concerned exclusively with the statements of fact contained within the affidavit itself. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Hatcher*, 473 F.2d 321 (6th Cir. 1973). Thus, the warrant and its affidavit must stand or fall on the facts as stated within them. *United States v. Brouillete*, 478 F.2d 1171 (5th Cir. 1973). This ensures that the reviewing court determine the issue of whether or not the affidavit is sufficient without relying upon faded and confused memories. *United States v. Anderson*, 453 F.2d 174, 177 (9th Cir. 1971). Moreover, such strict requirements ensure that the magistrate's function not be reduced to one of acting· as a rubber stamp for the police. *United States v. Roth*, 391 F.2d 507, 511 (7th Cir. 1967). Consequently, courts have uniformly refused to allow extrinsic testimony adduced at a suppression hearing to be used to augment or rehabilitate an otherwise defective affidavit. *Id.*, 509. All of this, however, does not mean that courts should interpret and construe warrants and their affidavits hypertechnically. Instead, the Supreme Court has directed that courts interpret and construe warrants and their affidavits in a realistic and commonsense manner. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965).

The affidavit in question was filed on September 11, 1981, by Special Agent Richard K. Robins of the Drug Enforcement Administration. It is composed of three pages. The first page recites that Special Agent Robins had reason to believe that the trunk of the 1979 Oldsmobile concealed a brown suitcase containing marijuana. The second page recites that on September 3, 1981, the defendant was arrested by Kent County deputies and that large sums of money and marijuana residue were subsequently discovered upon his person and within the interior of the vehicle he was operating. The top of page three explains that based upon the facts recited on page two the Drug Enforcement Administration seized the money ($7,953.11) as proceeds from the sale of marijuana pursuant to Title 21 U.S.C. § 881.

The affidavit then continues by reciting that Special Agents Richard K. Robins and John J. Peterson located the 1979 Oldsmobile as well as the defendant at 8401 Vergennes, Ada, Michigan. It states that the defendant was informed that the 1979 Oldsmobile was being seized for having been used to transport marijuana on September 3, 1981. The affidavit then closes as follows:

At the time of seizure, the affiant asked Daniel Longman if he had any valuables in the vehicle. Daniel Longman went immediately and opened the trunk of the vehicle and attempted to remove a brown suitcase and shotgun case that appeared to contain a shotgun. The affiant asked Daniel Longman what he was doing with the shotgun and suitcase. Daniel Longman responded, "They're mine. You

need a search warrant." Also at this time, Daniel Longman became extremely nervous and somewhat indignant. The affiant immediately took the shotgun and suitcase from Daniel Longman, placed them back in the trunk and closed the trunk. This being done to preserve the safety of the affiant and Special Agent Peterson. *While placing the suitcase in the trunk, the affiant detected a strong odor of marijuana coming from the suitcase.* The vehicle was then driven from 8401 Vergennes to the U.S. Federal Bldg. at Grand Rapids, Michigan, to be secured as an officially seized vehicle. (END)

Affidavit in Support of Search Warrant (Emphasis Court's)

■ The affidavit, when interpreted in a "realistic and commonsense manner," plainly reveals that the underlying support for the warrant to search the suitcase is derived entirely from Agent Robins' statement that he detected the odor of marijuana emanating from the suitcase. No other basis for supporting the search warrant has been put forth by the Government, nor can this Court discern any other reasonable alternatives.[3]

■ This leads· to defendant's argument that the agent did not lawfully come to detect the odor of marijuana. The gravaman of defendant's argument is that there was no lawful basis upon which the agent could have seized the suitcase. Defendant argues that the affidavit unmistakably states that the marijuana odor was detected *subsequent* to the seizure of the suitcase itself. In other words, defendant's position is that the affidavit's representation of the sequence of events concerning the seizure indicate that the agent lacked any basis upon which to seize the suitcase in the first

place. The Government has not chosen to argue that there were other grounds upon which the agent could have seized the suitcase.[4] Instead, the Government's position is that the marijuana odor was detected prior to the seizure of the suitcase. Thus, the issue reduces to a narrow factual inquiry concerning the sequence of events; namely, did the agent detect the odor of marijuana prior to seizing the suitcase? If not, then the seizure was unlawful and the subsequent detection of marijuana odor was but the "fruit of a poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Two conflicting versions of the seizure are before the Court. On one hand, this Court is presented with the affidavit of the seizing agent filed in support of the search warrant on September 11, 1981. It indicates that the odor was detected subsequent to the seizure of the suitcase. Juxtaposed against this is the January 8, 1982, in-court testimony of the seizing agent. It indicates that the odor was detected prior to the seizure of the suitcase.

The affidavit evinces a clear representation concerning the sequence of events. In unambiguous language, the affidavit indicates that the agent first inquired of the defendant as to where he was going with the suitcase; second, the agent seized the suitcase; and third *"while* placing the suitcase in the trunk" the agent detected "a strong odor of marijuana coming from the suitcase." *Affidavit,* pg 3 (emphasis Court's). The Government argues that nowhere in the affidavit does it state that the agent smelled marijuana for the first time while placing the suitcase back in the trunk. However, such an interpretation flies in the face of the natural meanings and implica-

---

**3.** The mere fact that the defendant had previously been charged with carrying marijuana in the same vehicle is not sufficient to support the search of a suitcase found within the trunk eight days later when the vehicle was not impounded during those eight days. Nor is it enough that a shotgun was found in the trunk along with the suitcase, especially since the Government made no showing that the possession of the gun was illegal. *United States v. Hatcher,* 473 F.2d 321, 323 (6th Cir. 1973).

**4.** In fact, the seizing agent himself was asked in cross-examination as to what supported the seizure of the suitcase:

Mr. Whetstone

Q: Mr. Robins, as I recall your testimony on direct examination, it was your statement that the reason that you seized the suitcase was the smell of marijuana coming from the suitcase, is that correct?

Special Agent Robins

A: That's correct.

tions of the language used in the affidavit. The plain import of the affidavit is that the agent did not detect the smell of marijuana until after he had seized the suitcase from the defendant.

At the January 8, 1982, suppression hearing, the testimony of Agent Robins reinforced the argument of the defendant that the events occurred in the same sequential manner as stated in the affidavit. Agent Robins admitted that the affidavit was written carefully without haste, that it was written immediately after the events it described within, that it was reviewed by a U. S. attorney, and that it stated the events as they happened.

The Government points to other testimony of Agent Robins in which he stated that he smelled the marijuana for the first time prior to seizing the suitcase. However, in later questioning counsel for the Government, Mr. Davis, asked the following: "When you first seized it, when you first got it, did you smell the odor of marijuana?" Agent Robins replied, without any qualification or further explanation, "Yes." This answer appears to be consistent with defendant's argument that it was not until the seizure itself that the agent first detected the smell of marijuana.

The Court finds the affidavit's representation of the events and their sequence to be more convincing than the in-court testimony discussed above. The affidavit was written immediately following the occurrence of the seizure and therefore possesses a great degree of reliability. Moreover, the affiant himself reinforced the reliability of the affidavit in his testimony concerning how he went about the drafting of the affidavit.

Therefore, this Court concludes that Agent Robins unlawfully seized the defendant's suitcase and strikes those references to marijuana odor from the affidavit. *Whiteley v. Warden,* 401 U.S. 560, 566 fn.

11, 91 S.Ct. 1031, 1036 fn. 11, 28 L.Ed.2d 306 (1971), *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Consequently, the affidavit lacks any sufficient basis upon which to establish probable cause for the search warrant to have issued and thus the marijuana and U. S. currency discovered pursuant thereto must be suppressed as evidence.[5]

Accordingly, defendant's motion to suppress the brown suitcase and contents thereof is hereby granted, in all other respects as to all other evidence defendant's motion to suppress is hereby denied.[6]

IT IS SO ORDERED.

---

5. This result makes it unnecessary for this Court to consider defendant's arguments concerning the warrant requirements of Title 21 U.S.C. § 881, and the matter of whether or not the agents violated defendant's reasonable expectation of privacy on September 11, 1981, when they drove to his residence to seize the Oldsmobile.

6. The defendant provided this Court with no basis upon which to determine the admissibility of the shotgun as evidence. Therefore this Court must deny the motion as to the shotgun.