[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1377 
Gregory Sterling was indicted for trafficking in cannabis in violation of § 20-2-80, Code of Alabama 1975. The appellant was found "guilty as charged in the indictment" and the trial court sentenced him to five years' imprisonment and a fine of $25,000.
Immediately preceding the trial in this case, the trial judge held a hearing to consider the appellant's motion to suppress the State's evidence. This averred that the search and seizure of the automobile driven by the appellant occurred without a warrant and allegedly without justification.
Agent Parker, a special agent with the Organized Crime Bureau of the Huntsville Police Department testified that at approximately 10:00 p.m. on July 28, 1981, he received information from a confidential informant that he had seen three subjects selling marijuana at the Earl Street Community Center on Indiana Street. He specifically identified one of the subjects as Thelonious Strickland. This informant had supplied Agent Parker with information on several occasions in the past and Agent Parker knew the information he had provided had been reliable.
After receiving this information, Agent Parker drove to the Earl Street Community Center with Agents Green and Taylor, also special agents with the Huntsville Organized Crime Bureau. When they arrived there, Agents Parker and Taylor got out of the car and hid in some bushes while Agent Green remained in the car to communicate with police headquarters. Agent Parker testified that he observed three suspects in the community center parking lot standing beneath a street light. During fifteen to twenty minutes of surveillance, Agents Parker and Taylor observed three separate exchanges between the three suspects and three separate individuals. Each transaction consisted of an individual who would approach the three suspects, the suspects would scan the street, the individual would give Strickland something, Strickland would give the individual something in return, the individual would put something in his pocket and walk away.
After the last transaction, the three suspects began walking toward an automobile parked near the agent's surveillance position. All three of the suspects appeared to be scanning the area and the agents observed the appellant smoking what appeared to be a marijuana cigarette. When the three arrived at the automobile, the appellant got in the driver's seat. At this point, the police identified themselves as police officers. The appellant started the ignition and the other two suspects ran. Agent Taylor pointed his shotgun in the car and told the appellant to turn off the motor, which he did. The other two suspects were subdued and apprehended. All three agents testified they detected the odor of burning marijuana coming from the interior of the automobile. From the outside of *Page 1378 
the automobile, the officers were able to see what they believed was a burning marijuana cigarette on the transmission floorboard (hump) and, also, an unlit marijuana cigarette on the driver's side of the front seat. The three suspects were then placed under arrest for possession of marijuana and were searched. A small manilla envelope containing green plant material was found on the appellant. This manilla envelope is commonly known as a "nickel bag of marijuana" and is used for sale. Agent Taylor read the suspects their Miranda rights.
The agents impounded the automobile pursuant to Huntsville Police Department policy and conducted an inventory of the contents of the automobile. Several .25 caliber bullets and a holster were found on the front seat. The appellant told the agents he did not own the automobile, that it belonged to his uncle and he had not given him the trunk key. The agents then opened the trunk electronically from inside the passenger compartment and found two grocery bags; one open and one closed. Within these two bags were five plastic bags containing green plant material. The open bag contained three of the plastic bags while the closed bag contained two. The officers took these bags into possession. The officers testified that the appellant asked them for his straw hat which they found in the trunk along with some more clothes and some .25 caliber bullets.
The trial judge, after hearing the testimony of the three agents, denied the appellant's motion to suppress the evidence and his trial began later that day.
At the trial, Agents Parker, Green and Taylor testified to basically the same facts which they had given at the motion to suppress hearing. The only other witness for the State was Martha Odum, who is a criminalist with the State Department of Forensic Sciences.
She testified she received five plastic bags containing green plant material enclosed in a larger plastic bag from Agent Taylor on July 29, 1981. The total weight of the five bags was 4.9 pounds and the weight of the individual bags ranged from 14.9 ounces to 16 ounces. She testified she determined that the plant material contained in the manilla envelope, the cigarette butt, the hand-rolled cigarette and the five bags was marijuana.
Appellant testified in his own behalf at this trial. He stated he had borrowed the car from his uncle in Chattanooga the day before his arrest. He denied knowledge of anything in the trunk because his uncle had not given him a trunk key. Appellant testified he went to the community center to look for his brother, Thelonious Strickland. After talking for a while at the community center, they walked to his uncle's car parked down the street. As he got in the car, he saw the police chasing his two companions. He said one of the officers stuck a shotgun through the car window and he got out. He denied that his straw hat was in the trunk or that he had asked for it. He admitted pleading guilty to altering United States currency in 1976. He denied he had been smoking anything, and claimed there was nothing burning in the car when he was arrested. Lastly, he testified that he knew his brother had sold marijuana at the community center in the past.
 I
Appellant contends the police lacked sufficient probable cause to effectuate his arrest and conducted an unreasonable search and seizure of the automobile which he was driving. Therefore, the appellant's motion to suppress should have been granted.
Since both of appellant's contentions hinge on whether the initial stop and seizure was reasonable, we discuss this issue first.
In stopping and frisk situations, courts have used a balancing test in determining the reasonableness of police conduct. The necessity of the stop and seizure must be viewed in light of the particular invasion which the stop and seizure involves. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). The governmental interest which allows official intrusion upon a private citizen's Fourth Amendment rights is *Page 1379 
that of effective law enforcement. The individual citizen is protected against unreasonable searches and seizures. However, in certain situations, not only is an invasive stop reasonable, but is merely a minor inconvenience and a petty indignity compared to the government's greater interest in crime prevention and detection. Terry v. Ohio, supra.
In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio, supra. The appropriate question to ask is ". . . [W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?". Terry v. Ohio, supra;Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).
Section 15-5-30 of the Code of Alabama 1975, allows the police, without probable cause, to "stop any person . . . in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him, his name, address and an explanation of his actions." This statute gives the police authority to stop and detain a person briefly for questioning based on a suspicion that the person might be engaged in criminal activity. We believe the informant's tip, along with the observation of appellant's actions, gave the police agents valid reason to believe appellant was involved in some type of criminal activity. The officers acted properly by stopping and seizing the appellant and conducting further investigation into his activities.
 A
Thus, we must examine the lawfulness of the appellant's arrest. Appellant contends the police did not have sufficient probable cause to arrest him.
Section 15-10-3, Code of Alabama, is the governing statute for warrantless arrests. This statute clearly allows an officer to make a warrantless arrest if he has reasonable and probable cause to effect that arrest. Whether the warrantless arrest was lawful depends upon whether "at the moment the arrest was made, the officers had probable cause to make it." White v. State,45 Ala. App. 1, 221 So.2d 117 (1969). We hold this arrest valid.
Now, we must examine the reasonableness of the search of the automobile which the appellant was driving and the search of his person.
The constitutional provision involved in this case is the Fourth Amendment to the United States Constitution. This amendment, of course, does not require that every search be made with a warrant. It only prohibits unreasonable searches and seizures. The reasonableness of the search and seizure must be examined rather than the reasonableness of the opportunity to procure a warrant. South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
It has long been recognized that there is a difference between the search of a dwelling and the search of an automobile. It is not always practical to secure a warrant to search an automobile since it can readily be removed from the jurisdiction from which the warrant would issue. Because of the mobility of an automobile, courts have recognized that under certain circumstances, police officers may, without a warrant, search for contraband concealed in an automobile. Carroll v.United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
The six circumstances under which the police may conduct an investigatory search into the interior of an automobile without a warrant were set out by the Supreme Court of this state inDaniels v. State, supra. They are:
 "(1) In `plain view,' see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
 "(2) With `consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson *Page 1380 v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461
(1938);
 "(3) As `incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In `hot pursuit' or `emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo. 1970) 454 S.W.2d 481;
 "(5) Where `exigent circumstances' exist coincidental with `probable cause' (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and
 "(6) In `stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968)."
Two of these exceptions are involved in this case. Each exception has its own applicability to a given set of fact situations involving warrantless searches. Simply because two or more of these exceptions may be involved in a certain situation, does not mean that they may be merged into one super justification. Each must be separately analyzed and supported by their own guidelines in order to justify a warrantless search. Some of the exceptions might justify a search of the passenger compartment but not necessarily the trunk, while others may justify a search of the entire vehicle. See Moylan,The Automobile Exception: What it is and what it is not — aRationale in Search of a Clearer Label, 27 Mercer L.Rev. 987 (1976) at 1012, 1013.
A search incident to a lawful arrest is reasonable under the Fourth Amendment. This exception has developed for the protection of the police officer and the prevention of the destruction of evidence. New York v. Belton, 453 U.S. 454,101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
When determining whether a search was reasonable under the search incident exception, we must first examine the legality of the arrest. Since the arrest in this case was, in fact, valid, as previously discussed, we now look to the area which may be searched. The scope of a search incident to an arrest depends on the arrestee's location and is measured by "the floating zone of reachability, lungability or graspability." See Moylan, The Automobile Exception, supra, at 1013. This certainly would include a search of the person and may include other areas as well. New York v. Belton, supra.
When determining the reasonableness of a search incident to an arrest where automobiles are involved, one must remember the automobile has no significance in itself. Just because a driver of an automobile has been arrested does not give the police the right to search the automobile. Only the areas which may be considered an extension of his person may be searched and this area may or may not intrude upon some, or all of the automobile. See Moylan, The Automobile Exception, supra, at 1014. See also New York v. Belton, supra.
In the instant case, we find the police conducted a legitimate search of the person of the appellant (which yielded the manilla envelope of marijuana) and of the interior of the automobile, (in which they found the two marijuana cigarettes). However, the search of the trunk of the appellant's automobile cannot be justified by the search incident exception. We must now determine if one of the other exceptions would apply to the search of the trunk.
 II
The right to search and the validity of the seizure under the automobile exception is not dependent on the right to arrest. Rather, the search and the seizure are based on the probable cause the police officer has for belief that the automobile contains contraband or other illegal items. Chambers v.Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
A police officer is authorized to make a warrantless search of an automobile under the automobile exception whenever (1) he has probable cause to believe that the automobile contains evidence of a crime and *Page 1381 
(2) exigent circumstances which require an immediate search. See Moylan, The Automobile Exception, supra, at 987. The automobile exception, as established in Carroll v. UnitedStates, supra, is applicable only to searches of automobiles based on probable cause. United States v. Ross, ___ U.S. ___,102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). See also Ex Parte Vogel, No. 80-175 (Ala. July 23, 1982). A warrantless search is justified if it is based on facts which would be sufficient for the issuance of a warrant. United States v. Ross, supra.
Since the search of the automobile which was driven by the appellant must be supported by probable cause, we must determine and do hold that probable cause existed in this case. "Probable cause exists when the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information are sufficient to cause the officers to conscientiously entertain a strong suspicion that the object of the search is in the particular place to be searched." Hattonv. State, 359 So.2d 822 (Ala.Cr.App. 1977); People v. Gregg,43 Cal.App.3d 137, 117 Cal.Rptr. 496 (1974); Carroll v. UnitedStates, supra.
When we speak of probable cause, we are dealing with probabilities which are factual and practical considerations of everyday experience. The police officer must make split-second decisions based on his knowledge and experience. He is not a legal technician who has the benefit of hindsight analysis. Therefore, the standard we set for our police officers is that of the reasonable and prudent man. Brinegar v. United States,338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
A warrantless search based on probable cause may be as thorough as a search authorized by a warrant.
 "The scope of a warrantless search based on probable cause is no narrower — and no broader — than the scope of a search authorized by a warrant supported by probable cause."
United States v. Ross, supra; Ex parte: Vogel, supra.
Moreover, a finding of probable cause to make a warrantless search of the automobile was justified when the officers detected the odor of marijuana emanating from the interior of the automobile. We believe the odor of marijuana was in itself enough to provide probable cause to initiate a search when considered with the other factors herein set forth. Rose v.City of Enterprise, 52 Ala. App. 437, 293 So.2d 862 (1974);People v. Cook, 13 Cal.3d 663, 119 Cal.Rptr. 500, 532 P.2d 148
(1975); State v. Houlf, 27 Ariz. App. 633, 557 P.2d 565 (1976); but see People v. Gregg, supra.
We hold that a police officer may rely on an aroma of marijuana to give him probable cause to suspect that contraband is present and may be concealed in other areas of the automobile. People v. Cook, supra.
Once evidence of marijuana is lawfully observed by a police officer in any part of the automobile, the entire vehicle, including the trunk may be searched.
 "Common sense suggests that the size and nature of an automobile owner's property determines whether the owner selects the passenger compartment or the trunk as the place for storage. Similarly, the trunk is as likely a place for the storage of weapons and contraband as the passenger compartment, if not more so." (Footnote omitted).
United States v. Longman, 533 F. Supp. 176 (W.D.Michigan, 1982).
As to the grocery bags found within the trunk, "the practical consequences of the Carroll decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container." United States v. Ross, supra. The scope of a search for contraband is not defined by the nature of the container in which it may be concealed. Rather, the *Page 1382 
permissible scope is defined by the object of the search and the places in which there is probable cause to believe that the contraband may be concealed. United States v. Ross, supra.
We have established that the police officers had probable cause to search the entire vehicle and its persons and contents.
Given the inherent mobility of automobiles, courts have recognized that, in certain instances, it is impractical, if not impossible, to secure a warrant to search an automobile before it is removed from the jurisdiction. United States v.Ross, supra. Thus, when exigent circumstances coexist with probable cause, police officers are justified in conducting an immediate search of the vehicle at the scene. United States v.Ross, supra.
However, the United States Supreme Court as well as the Supreme Court of this state, have upheld warrantless searches of automobiles where no indication that the automobile would be removed from the jurisdiction or that evidence within it would be destroyed. South Dakota v. Opperman, supra; Reid v. State,388 So.2d 208 (Ala. 1980).
The United States Supreme Court in Chambers v. Maroney, supra, addressed the issue of exigent circumstances and held that "[F]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Hatton v. State, supra; Reid v.State, supra.
We therefore hold that the search of the automobile driven by the appellant was supported by probable cause and therefore was a proper exercise of the police officer's authority.
 III
In this cause, the police agents made an inventory of the items seized from the trunk of appellant's vehicle while at the scene of the arrest.
The inventory of the automobile driven by the appellant was carried out in accordance with the standard procedures of the Huntsville Police Department and was a valid intrusion into that part of the automobile as heretofore noted in this opinion.
Where, as here, proper procedures are followed in making the inventory in question, such is constitutional under SouthDakota v. Opperman, supra, and Lippold v. State,365 So.2d 1015, (Ala.Cr.App. 1978).
We therefore hold that the items seized were properly inventoried in this cause.
 IV
The appellant contends that the marijuana was improperly admitted into evidence on the ground the state failed to demonstrate a proper chain of custody.
We have examined this record and determined through the testimony of Agent Green, who took possession at the scene, and other officers who subsequently turned this evidence over to Mrs. Martha Odum at the State Department of Forensic Sciences, that a proper chain of custody for the admission of this evidence was properly shown.
 V
The appellant contends that the state failed to prove the requisite amount of cannabis sufficient to sustain the conviction.
This court in Dickerson v. State, 414 So.2d 998 (Ala.Cr.App. 1982) stated:
 "It is well established that the burden is upon the appellant to establish and bring himself within any exclusion which is found not in the enacting clause defining a crime but rather in a subsequent clause or statute. Specifically, he must establish that the marihuana seized from his residence contained excludable matter falling within the definition of such under § 20-2-2 (15)."
See also Ellis v. State, [Ms. Nov. 2, 1981, 7 Div. 978], (Ala.Cr.App. 1982).
The appellant in this case offered no evidence at trial to bring him within the exclusion *Page 1383 
set forth. Therefore, we believe the testimony given by Mrs. Odum concerning the weight was sufficient to sustain the appellant's conviction.
We have carefully examined each issue and find this record free of error. The judgment below is therefore affirmed.
AFFIRMED.
All the Judges concur.