[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1387 
Appellant, Zollie Donnis Oliver, was indicted by the November 1983 term of the Franklin County Grand Jury for possession of 197.4 grams of marijuana. On February 8, 1984, a jury was struck and sworn, after which a hearing on appellant's motion to suppress was held outside the presence of the jury. At the conclusion of this hearing the court declared a mistrial due to the absence of a witness who was scheduled to testify for both the State and appellant. On May 11, 1984, another jury was empanelled and a trial was held. Appellant was found guilty as charged in the indictment. On May 14, 1984, the court sentenced appellant to eighteen years in the penitentiary and fined him $10,000, upon application of the Habitual Felony Offender Act. This appeal followed.
Appellant first contests the lawfulness of the search and seizure of six bags of marijuana found on appellant's person, and ten bags of marijuana found in a "cooler" at appellant's feet. The State argues that the search and seizure fall with the purview of the plain view doctrine.
Deputy Robert Hill, part-time employee of the Sheriff's Department, testified that he and Deputy Harry Hubbard spotted a blue van while out on patrol. They had previously received a report of a van being driven recklessly in the area, but were in that area in response to an unrelated call. They followed the van for approximately one-half mile and observed erratic driving, more specifically, that the vehicle was driving down the center of the road and "not on his side." Hill acknowledged that the road was filled with potholes and somewhat rough, but these factors were taken into consideration before the decision was made to stop the van. After stopping the vehicle, Hubbard spoke with the driver, Tim Oliver, appellant's son, and Deputy Hill approached from the passenger side and spoke with appellant. As Hill approached, he observed beer cans and a styrofoam cooler, with the side broken off, in the back of the van.[1]
As Hill spoke with appellant, he observed a clear plastic bag protruding from around appellant's waist. Hill observed a green leafy material in the bag, which he recognized as marijuana. Hill subsequently removed the bag and asked appellant to step out of the van. A search of appellant's person revealed the presence of five more bags of marijuana. Hill then opened the cooler, which was located at appellant's feet in the van, and discovered ten more bags of marijuana. Appellant and his son were then arrested for illegal possession of alcohol and the officers told appellant and his son that one or both of them would be charged with possession of marijuana when they discovered "who the marijuana belonged to."
We find that the seizure of marijuana from appellant's person was justified under the "plain view" exception to the warrant requirement and that the seizure of marijuana located in the van was justified under the "exigent circumstances coincidental with probable cause" exception. See Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Carroll v.United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925);Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). "Each exception has its own applicability to a given set of fact situations involving warrantless *Page 1388 
searches. . . . Each must be separately analyzed and supported by their own guidelines in order to justify a warrantless search." Sterling v. State, 421 So.2d 1375, 1380 (Ala.Crim.App. 1982). A list of exceptions to the warrant requirement is stated in Daniels and Vogel v. State, 426 So.2d 863
(Ala.Crim.App. 1980), aff'd, 426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).
The "plain view" exception to the warrant requirement permits a warrantless seizure of evidence if "the seizing officer (1) has prior justification for the intrusion, (2) comes upon the evidence inadvertently, and (3) immediately recognizes the object discovered as evidence of wrongdoing." Myers v. State,431 So.2d 1342, 1344 (Ala.Crim.App. 1982), writ quashed,431 So.2d 1346 (Ala. 1983); Spann v. State, [Ms. 4 Div. 382, June 11, 1985] (Ala.Crim.App. 1985). Appellant argues that reliance on an anonymous tip does not justify the stopping of his vehicle. The testimony of Hill and Hubbard clearly shows that the van was stopped due to its being erratically driven to such an extent that the deputies suspected the driver of being intoxicated. The officers were clearly justified in stopping the vehicle to investigate a possible traffic violation, which they had probable cause to believe was occurring, based on their observations. There is nothing in the record to suggest that Hill was searching for marijuana when he approached appellant and observed the bag in the waistband of appellant's pants. Hill was merely assisting Hubbard. When Hill observed the plastic bag he noticed a green leafy material which he recognized as marijuana. The trial court specifically questioned Hill concerning his ability to identify marijuana and was apparently satisfied with his credentials, as we are. Thus, the State has proven all the elements necessary to justify a warrantless search of appellant's person based on the plain view exception to the warrant requirement. See Herrin v.State, 349 So.2d 103 (Ala.Crim.App.), cert. denied,349 So.2d 110 (Ala. 1977). There is nothing, however, to suggest that the marijuana contained in the cooler was open to the view of Hill as he spoke with appellant. This second seizure must therefore be sustained on other grounds.
The "exigent circumstances coincidental with probable cause" exception to the warrant requirement expressed in Carroll v.United States, supra, authorizes the warrantless search of a vehicle when the police initially have probable cause to believe that the vehicle contains contraband or evidence of a crime, and if exigent circumstances exist. See Spann. Hill clearly had probable cause to authorize a search of the vehicle based upon his lawful observation of marijuana on appellant's person. In Sterling, 421 So.2d at 1381, this court stated, "Once evidence of marijuana is lawfully observed by a police officer in any part of the automobile, the entire vehicle, including the trunk may be searched." See also Ross v. UnitedStates, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982);Jones v. State, 432 So.2d 19 (Ala.Crim.App. 1983). Having sufficient probable cause to search the vehicle, there was no error in Hill's opening the cooler to determine its contents. The court in Ross, 456 U.S. at 823-825, 102 S.Ct. at 2172-2173, clearly defined the limits of a search authorized by theCarroll exception, stating:
 "The scope of a warrantless search based on probable cause is no narrower — and no broader — than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize.
 "The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found.
". . .
 ". . . If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the *Page 1389 
vehicle and its contents that may conceal the object of the search."
The object of the search in the case at bar was marijuana, which could easily have been, and was, concealed in the cooler located at appellant's feet. A warrant issued by a magistrate would have authorized a search of the cooler, as a place "in which there is probable cause to believe that it may be found."
Probable cause having been shown to exist, there must also be a showing of exigent circumstances. "Exigent circumstances exist whenever an object to be searched is mobile or moveable, such as an automobile." Spencer v. Town of Gordo,389 So.2d 182, 184 (Ala.Crim.App. 1980); see also Chambers v. Maroney,399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Etheridge v.State, 414 So.2d 157 (Ala.Crim.App. 1982); Rickman v. State,361 So.2d 28 (Ala. 1978). The State established that the cooler was located in the van at the time Hill opened it to determine its contents.
We hold that Hill's seizure of the marijuana was justified under the principles expressed above. We find no error in the trial court's ruling of admissibility as to this evidence.
 II
Appellant next contends that double jeopardy considerations bar a second trial after a mistrial has been declared due to the absence of a witness required to be present at appellant's insistence. On February 8, 1984, a jury was struck and sworn to try this cause. A hearing on appellant's motion to suppress was held outside the presence of the jury. This motion was denied. At the conclusion of the motion to suppress proceedings, the trial court declared a mistrial due to the unavailability of Hubbard. The trial court stated:
 "The State indicated prior to the discharge of the jury that they were ready to try the case without Mr. Hubbard as a witness. The Defendant requested Mr. Hubbard's presence. Based on the testimony that I have heard up until now on motion to suppress, there is a question as to whether or not Mr. Hubbard might be needed by the State, as well as by the Defense, but it is my understanding that the Defense was not ready to try the case without Mr. Hubbard. Is that correct?
"MR. ODEM (Defense counsel): That's correct.
 "THE COURT: Neither one of you asked for a continuance, or asked the Court to do what the Court did, but it is my understanding that the Defense was not ready to try the case without Mr. Hubbard.
"MR. ODEM: Not without Mr. Hubbard. (Emphasis added.)
The mistrial was entered for the benefit of appellant and clearly with appellant's consent. No objection was raised by appellant and the State was ready to proceed without Hubbard.
In United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187,57 L.Ed.2d 65 (1978), the Court stated:
 "When a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy. . . . Such a motion may be granted upon the initiative of either party or upon the trial court's own initiative . . . . in passing on the propriety of a declaration of mistrial granted at the behest of the prosecutor or on the court's own motion, this Court has balanced `the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him;' Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100
(1963), against the public interest in insuring that justice is meted out to offenders."
The Double Jeopardy Clause is intended to "protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." United States v.Dinitz, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, *Page 1390 47 L.Ed.2d 267 (1976). "[W]here the judge, acting without thedefendant's consent, aborts the proceeding, the defendant has been deprived of his `valued right to have his trial completed by a particular tribunal,'" United States v. Jorn,400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971); however, the Double Jeopardy Clause "does not relieve a defendant from the consequences of his voluntary choice," Scott,473 U.S. at 99, 98 S.Ct. at 2198. At 22 C.J.S. Criminal Law § 261 (1961), it is stated:
 "One cannot plead former jeopardy where the jury before whom he was first on trial were discharged, or a mistrial was declared, on his own motion, or at his instance, or with his consent or approval, . . .
without the jury's having reached a verdict. So where an accused consents to, or moves for, a mistrial, he is deemed to have waived the constitutional bar to a second trial; the consent inherent in a motion for a mistrial precludes a later claim of double jeopardy."
We, of course, note that where the appellant's motion for mistrial is prompted by judicial or prosecutorial error intended to provoke the motion or is otherwise motivated by bad faith or undertaken to harass or prejudice the defendant, then double jeopardy considerations may act to bar retrial. See Leev. United States, 432 U.S. 23, 33-34, 97 S.Ct. 2141, 2147-2148,53 L.Ed.2d 80 (1977). This is not the situation in the case before us; there is absolutely no evidence, or argument, that the court declared a mistrial motivated by bad faith or to harass or prejudice appellant. Appellant has failed to argue or assert any prejudice due to the mistrial, and, in fact, indicated to the court that he was not prepared to go forward without the witness present.
Although it was the trial court that first raised the issue of mistrial, appellant "freely and without any misconduct on the part of the prosecutor or the judge, consented, through counsel, to the declaration of a mistrial. That consent removes any bar to retrial." United States v. Bobo, 586 F.2d 355, 366
(5th Cir. 1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1546,59 L.Ed.2d 795 (1979). We hold that there was no double jeopardy bar to appellant's trial following the granting of a mistrial on February 8, 1984.
 III
Appellant argues that "the trial court abused its discretion in admitting illegally seized evidence which remained in the custody of a policeman later convicted under the same statute under which the appellant was convicted." We have previously determined that the marijuana was not illegally seized. At trial Hubbard testified that he was no longer with the Sheriff's Department due to his serving a four-year sentence for selling marijuana. There is nothing in the record to suggest that Hubbard did anything improper with this evidence while it was in his possession. Appellant suggests, without explicitly so stating, that Hubbard may have done something improper with this evidence, but appellant does not tell us precisely what he means. The basis of his argument otherwise revolves around a chain-of-custody contention.
The purpose of establishing a chain of custody is to show a reasonable probability that there has been no tampering with the item of evidence. Bell v. State, 339 So.2d 96
(Ala.Crim.App. 1976). In passing upon the admissibility of such evidence, "the trial judge should consider the nature of the article and the circumstances surrounding its preservation and custody," and permit its introduction where continuity of possession is "sufficiently established to afford ample assurances of . . . authenticity." Washington v. State,339 So.2d 611, 615 (Ala.Crim.App.), cert. denied, 339 So.2d 616
(Ala. 1976) (citations omitted). See also Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala.Crim.App. 1985).
Hill seized the marijuana from appellant. Hill and Hubbard transported it back to the police station and placed the evidence in Hubbard's evidence locker, to which only Hubbard had access. The marijuana remained in Hubbard's locker for *Page 1391 
two days until both Hubbard and Hill took the evidence from the locker and delivered it to Investigator Nix. Hubbard testified that, when it was turned over to Nix, the marijuana was in the same condition as when he received it. Hubbard identified the marijuana at trial as being the same which he and Hill confiscated from appellant. There is no contention that the marijuana was contaminated or tampered with while under the control of Hubbard. We find no merit to appellant's rather vague contention that Hubbard's custodial possession of the marijuana was improper due to his subsequent conviction for selling marijuana.
Appellant also objects to the absence, at trial, of Ramona Daugherty, a secretary at the Department of Forensic Sciences. Nix testified that he gave the evidence to Daugherty. Daugherty did not testify at trial; however, Joseph Gary Wallace testified that he was present when Nix deposited the evidence with Daugherty. Wallace testified that Daugherty received the marijuana from Nix and "logged it in," in accordance with standard procedure at the department. Wallace took the evidence from Daugherty and tested the substance. Wallace determined the evidence to be marijuana, and identified it as such at trial. Wallace returned the evidence to Nix who maintained possession until trial. Given the testimony of Wallace, we believe that the identification and continuity of possession were sufficiently shown to afford ample assurances of authenticity, so that the marijuana was properly introduced into evidence at trial. For a similar case see Jackson.
 IV
We have considered the remaining issues raised by appellant and have determined that they either are without merit or were not properly preserved in the trial below for our review.
Based on the foregoing, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] Franklin County is a dry county and possession of beer there is illegal.
 *Page 1