[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 707 
The appellant, Jimmy Kinard, was convicted for the offense of murder and was sentenced to twenty years' imprisonment. For the reasons outlined below, the conviction is due to be affirmed.
The appellant was employed at The Drifters Lounge, which was owned by Rhondal Gene Lane, the victim of the crime now before this court. An argument between the appellant and the victim resulted in his death.
Appellant pleaded not guilty to the indictment by reason of self defense. Detective Jacobs of the Selma Police Department testified that the appellant gave a complete statement indicating that he had shot his employer in self defense.
 I.
The appellant argues that his Fifth Amendment rights were violated when he was retried following a mistrial.
A mistrial was granted in the appellant's first trial because of the possibility that the jury members might have been prejudiced against the appellant because they had had an opportunity to examine the appellant's statement during the course of the trial. While the jury had been excused for noon recess, the assistant district attorney responsible for the case allowed a member of the press and a family member of the victim to read statements from his file that had been allowed into evidence during the morning proceedings. The file, which was left with them, was to be retrieved by the judge's secretary before she went to lunch. When the secretary collected the file, a slip of paper containing a statement given by the appellant was inadvertently left on the table in the jury room. Following a hearing on the aforementioned matter, the court granted the appellant's motion for a mistrial, but the court specifically found that the statement was not left in the jury room deliberately.
The standard to be applied in the determination of a claim of a Fifth Amendment double jeopardy bar following a defendant's motion for mistrial was enunciated in Oregon v. Kennedy,456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982):
 "[T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial." (Emphasis added.) 456 U.S. at 679, 102 S.Ct. at 2091.
In United States v. Scott, 437 U.S. 82, 92, 98 S.Ct. 2187,2194, 57 L.Ed.2d 65, the Court stated:
 "When a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy. . . . Such a motion may be granted upon the initiative of either party or upon the court's own initiative. . . . [I]n passing on the propriety of a declaration of mistrial granted at the behest of the prosecutor or on the court's own motion, this Court has balanced `the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him; Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963), against the public interest in insuring that justice is meted out to offenders."
However, as Judge Patterson noted in Oliver v. State,479 So.2d 1385 (Ala.Cr.App. 1985), at 1390:
 "We, of course, note that where the appellant's motion for mistrial is prompted by judicial or prosecutorial error intended *Page 708 
to provoke the motion or is otherwise motivated by bad faith or undertaken to harass or prejudice the defendant, then double jeopardy considerations may act to bar retrial. See Lee v. United States, 432 U.S. 23, 33-34, 97 S.Ct. 2141, 2147-2148, 53 L.Ed.2d 80 (1977)."
It is equally true that a defendant may not use the "principle of double jeopardy to relieve himself from the consequences of his voluntary choice", as opposed to a situation wherein the judge aborts the proceedings without the defendant's consent. Here, the appellant freely consented, through counsel, to the mistrial. "That consent removes any bar to retrial. UnitedStates v. Bobo, 586 F.2d 355 (5th Cir. 1978) at 366, cert.denied, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979)."Oliver v. State, 479 So.2d 1385 (Ala.Cr.App. 1985).
In the present case, the court specifically found that the statement was unintentionally left in the jury room. Further, the testimony indicates that the prosecutor was not aware of the mistake that had been made. The record is void of any calculated prosecutorial conduct which tended to provoke the motion for mistrial. The record is also void of any evidence of bad faith on the part of the prosecutor. Clearly, the mistrial was not the result of intentional acts of the prosecutor. Therefore, the appellant's claim of double jeopardy is without merit.
 II.
The appellant argues that the trial court improperly denied his motion to suppress the statement he gave to the police. The appellant does not contend that he did not receive the Miranda
warning, nor does he attack the voluntariness of the Miranda
waiver. The appellant sets forth, in his brief, that he was first charged with assault in the first degree, and that during the course of interrogation, the interrogating officer was informed that the victim had died. Thereafter, the charge was changed to murder. The interrogating officer testified on cross-examination, that he advised the defendant that the charge would be changed; however, he did not discuss the meaning of the charges of assault or murder, or the difference between the two, nor did he discuss the punishment of either offense. Appellant now contends that the failure of the interrogator to explain the definition of the charged crime violated the principles of Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We do not agree.
The record reveals that the appellant was properly given hisMiranda warnings and that he voluntarily executed a waiver on more than one occasion. The trial court properly denied the appellant's motion to suppress his statement.
 III.
The appellant argues that the gun found in his car at the police station should have been suppressed. During the course of the interrogation of the appellant, he informed the interrogating officer that he had driven to the Selma Police Department and had parked the car in the alley at the police station. The appellant stated he had shot the victim in self defense and also indicated that the pistol he had used in the shooting was in the front seat of the automobile wrapped in a shirt. Thereafter, Detective Jacobs, the interrogating officer, went with the evidence officer, Jim Rutledge, for the purpose of corroborating an inventory of the appellant's automobile. Prior to the inventory, the keys to the appellant's automobile were obtained from the booking officer and used to unlock the car. No search warrant was obtained before the search, nor was any consent to the search obtained from the appellant.
This court was called on to address the constitutionality of a warrantless search of an automobile in Sterling v. State,421 So.2d 1375 (Ala.Cr.App. 1982). In addressing the issue, Judge Tyson noted that:
 "The right to search and the validity of the seizure under the automobile exception is not dependent on the right to arrest. Rather, the search and seizure *Page 709 
are based on the probable cause the police officer has for belief that the automobile contains contraband or other illegal items. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419
(1970)." Ibid. at 1380.
A warrantless search is justified if it is based on facts which would be sufficient for the issuance of a warrant. UnitedStates v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572
(1982).
Judge Taylor addressed this issue in Vaughn v. State,473 So.2d 661 (Ala.Cr.App. 1985), stating:
 "Searches conducted outside the judicial process, without prior approval of the court, are per se unreasonable under the Fourth Amendment subject only to a few well delineated exceptions. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290
(1978), Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Vogel v. State, [426 So.2d 863 (Ala.Cr.App. 1980)] One such exception is the inventory search made to secure valuable or similar items. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Wilkinson v. State, 374 So.2d 400 (Ala. 1979). In the instant case the search was an `inventory search' conducted pursuant to established police procedure and as such was not improper. We further note that in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), it was held that when probable cause exists a search of a vehicle `is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.' Here the facts clearly would support the issuance of a warrant. Therefore, we hold that the search of the vehicle was valid under both the inventory search exception and the rule espoused in Ross and that the fruits of the search were properly not suppressed." 473 So.2d at 664.
In the present case, the appellant's voluntary statement regarding the location of the weapon satisfied the requisite probable cause. The facts would have supported the issuance of a warrant in this case. Probable cause exists when the reasonably reliable information known to the officers is sufficient to cause the officers to entertain a strong suspicion that the object of the search is in the particular place to be searched." Sterling, supra, citing Hatton v. State,359 So.2d 822 (Ala.Cr.App. 1977).
The automobile exception normally arises where a two-prong test is satisfied: (1) a police officer must have "probable cause to believe that the automobile contains evidence of a crime; and, (2) exigent circumstances . . . require an immediate search." Sterling, supra, at 1380-1381. However, both the United States Supreme Court and the Alabama Supreme Court have upheld warrantless automobile searches where no exigent circumstances existed; and where there was no evidence that the automobile might be destroyed or removed from the jurisdiction.Sterling, supra; South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Reid v. State,388 So.2d 208 (Ala. 1980). "The United States Supreme Court in Chambersv. Maroney, [399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419
(1970),] addressed the issue of exigent circumstances and held that `[F]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.' Hatton v. State, [359 So.2d 822
(Ala.Cr.App. 1977)]; Reid v. State, supra." Sterling, supra, at 1382.
The present search of the vehicle was valid under the standards previously enunciated. The trial court properly denied the appellant's motion to suppress.
 IV.
The appellant argues that the trial court erred in its denial of his request to conduct a voir dire examination of a state's witness, Officer Rutledge. *Page 710 
Officer Rutledge, an evidence technician with the Selma Police Department, at one point during voir dire examination, testified that he had experience in identifying the shape of bullet holes in relation to their angles. Rutledge further testified that he had received training regarding firearm identification and powder burn residue at numerous police seminars, as well as at the police academy.
Subsequently, during direct examination, the following occurred:
 "Q. All right. Thank you, sir. Did you examine the holes on the hood of the car and the holes there in the air duct fabric?
"A. Yes, sir.
"Q. As to any alignment or connection between them?
"A. Yes, sir.
"Q. What did you find?
 "MR. FAILE: Objection, Your Honor. He's not qualified to answer that question. He's not been shown, not been any predicate laid to show that he was qualified to make a determination like that.
 "MR. GREENE: I certainly think any lay person could make a determination if there's any correlation between several different holes. [Emphasis added.]
 "MR. FAILE: He's got photographs in evidence that speak for themselves. This man is not an expert.
 "THE COURT: I would overrule the objection. I do not think this witness has to be qualified as an expert to testify to what he saw. [Emphasis added.]
 "MR. FAILE: If he's going to make a determination that would require expert testimony, Your Honor, we would object to it.
"THE COURT: Overruled.
"Q. (Continuing:) Do you recall the question, sir?
"A. You better state it again, sir.
 "Q. I asked you if you examined the holes on the exterior of the hood and the holes through the fabric of the air duct and asked you if there's any correlation between them or if you found any.
"MR. FAILE: Could I take him on voir dire?
"MR. GREENE: We object.
 "MR. FAILE: I'd like to take him on voir dire. (Whereupon the following proceedings were held outside the presence of the jury:)
 "THE COURT: This man doesn't have to be an expert to testify that one hole is — I do not want him going into any technical testimony as to the entry of a line or an explanation of what angle this bullet went.
 "MR. FAILE: Are you going to let him testify? I'm going to have to ask him did he [sic] did he anything as far as the projectiles — I just don't want to be caught saying that I opened this thing up. I don't think he's qualified to answer this question right now. I would like to take him on voir dire to show that he's not qualified to answer the question because he hasn't done anything but look at it. That's all.
"MR. GREENE: That's enough.
 "MR. FAILE: I ask for some voir dire questions. Now, of course, if the Court is going to allow him to do it on cross-examination I'm going to have to ask him how he made that determination. I'm certainly not contemplating a door for any kind of expert testimony which he's not qualified to —
 "THE COURT: (interposing) I would sustain any objection as to any technical testimony, being run or qualifying as to any specific angles of what degree or force or anything like that. But any laywitness is qualified to state —
 "MR. FAILE: (interposing) How can a man testify as to what happened to a projectile then —
 "THE COURT: (Interposing) I'm not going to allow that. I'll sustain that until he's qualified as to that. I understand Mr. Greene's question to be in relationship to the two holes, and I'm anticipating *Page 711 
what his answer is going to be. He's going to say that one is right under the other.
"MR. GREENE: That's all he can say.
"MR. FAILE: I object on the same grounds.
"THE COURT: Overruled.
"MR. FAILE: We would like to take him on voir dire.
 "MR. GREENE: That's a matter for cross-examination. He's been asked now did he make an examination and if his answer is yes, then the question would be, did he find any correlation. Now he can answer that. He can tell what he found and that's it.
 "THE COURT: I don't think you need any voir dire. (Whereupon the following proceedings were resumed in the presence and hearing of the jury:)
 "Q. (Continuing:) Now, sir, do you recall the question?
"A. I think I do.
"Q. All right.
 "A. First of all, the air duct was observed to be on the same side of the car, in the general area of the holes. Closer examination by raising and lowering the hood several times gave me the opinion that the holes were —
"MR. FAILE: (Interposing)
"Objection to what his opinion is.
"MR. GREENE: He can give it.
"MR. FAILE: He can testify to what he saw."
The trial court, in its discretion, may deny defense counsel the opportunity to examine or voir dire a State's witness during the State's direct examination. Shelton v. State,384 So.2d 869 (Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala. 1980); Sanders v. State, 426 So.2d 497 (Ala.Cr.App. 1982);Carson v. State, 49 Ala. App. 413, 272 So.2d 619 (1973); Gulleyv. State, 342 So.2d 1362 (Ala.Cr.App. 1977). The trial court has a duty to move the testimony expeditiously along, and for this reason, the appellate courts will not interfere unless there has been a clear abuse of discretion. Townsell v. State,255 Ala. 495, 52 So.2d 186 (1951).
The appellant relies on Smith v. State, 466 So.2d 1026
(Ala.Cr.App. 1985), which is a case substantially similar to the present case. This court, in Smith, notes that even though the officer's testimony may have been improperly allowed as unpredicated expert testimony, a review of the record showed that the officer did not attempt to testify as to the direction from which the bullet was fired. He merely recited the path of the ricocheted bullet. Substantially the same testimony was allowed in the present case.
This court ruled in Smith that it failed to see any resulting prejudice or harm to the appellant based on this testimony. Similarly, even assuming the ruling was erroneous, the appellant, in the present case has failed to show that the failure of the court to allow voir dire examination injuriously affected his "substantial rights." A.R.A.P., Rule 45.
 V.
The appellant argues that two statements made by the prosecutor during closing argument were highly prejudicial and should not have been allowed. He specifically alleges that the district attorney's statement that the appellant was "an unmitigated liar and murderer" was highly prejudicial. He also contends that the prosecutor's remark referring to the instant case as "being the case of the death of Rhondal Lane" was an impermissible comment by the prosecutor.
As a general rule, "[s]tatements of counsel in argument to the jury must be viewed as in the heat of debate, and such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict." (Citation omitted.) Sanders v. State, 426 So.2d 497,509 (Ala.Cr.App. 1982). "It is not every improper remark to which objection is not sustained which will require a reversal." Flint v. State, *Page 712 370 So.2d 332, 334 (Ala.Cr.App. 1979). "In reviewing allegedly inflammatory questions or remarks by counsel which may result in irreparable prejudice to the accused, no legal standard exists by which to judge the effect of such. Each case must be determined on its own merits with deference given to the issues, parties, and general circumstances of the particular case." (Citations omitted.) Pickett v. State, 417 So.2d 589,592 (Ala.Cr.App. 1982). "The trial judge is in a better position than an appellate court to determine whether the remark was so prejudicial as to be ineradicable." Wilson v.State, 428 So.2d 197, 200 (Ala.Cr.App. 1983); Averette v.State, 473 So.2d 631 (Ala.Cr.App. 1985).
In the present case, the comment in question made by the prosecutor must be viewed as having been made in the heat of debate, and we find that it resulted in no apparent prejudice to the appellant. Further, these statements did not have "a natural tendency to influence the finding of the jury" and therefore would not require a reversal. Flint, supra, at 334. We find no abuse of discretion by the trial court and, therefore, appellant's argument must fail.
 VI.
Finally, appellant contends that the trial court's refusal of the appellant's written charges regarding reasonable doubt, presumption of innocence, and burden of proof, constitutes reversible error. It is well settled that a trial court's refusal to give written requested charges will not constitute prejudicial error where such charges are substantially and fairly covered in the court's oral charge. Henderson v. State,460 So.2d 331 (Ala.Cr.App. 1984); Moore v. State, 457 So.2d 981
(Ala.Cr.App. 1984). Further, the appellant's acquiescence to the charges given barred his ability to bring up the matter on appeal. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981),aff'd, 414 So.2d 993 (Ala. 1982); Adkins v. State,481 So.2d 431 (Ala.Cr.App. 1985).
AFFIRMED.
All the Judges concur.